## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| EMMA MENDOZA and MANUEL MENDOZA, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | Case No. 4:19-cv-225 |
| v. | **CLASS ACTION COMPLAINT** |
| STORM TIGHT WINDOWS OF TEXAS, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs, Emma Mendoza and Manuel Mendoza, individually and on behalf of all other persons similarly situated, by their attorneys, for their Complaint against Defendant, Storm Tight Windows of Texas, Inc. ("STW") allege the following:

## NATURE OF THE ACTION

1.      This is a consumer class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. arising out of STW's unlawful mass telemarketing practices to solicit consumers to purchase its goods and services, including windows and doors and the installation thereof.

2.      Put simply, STW willfully and flagrantly violates the TCPA by placing unsolicited telemarketing calls to consumers' cellphones and residential landlines using an 'automatic telephone dialing system' ("ATDS") without first obtaining their prior express written consent, as required by the TCPA.

3.      The Rules and Regulations implementing the TCPA expressly prohibit initiating, or causing to be initiated, any telephone call to a cellular phone that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system without

first obtaining the prior express written consent of the called party to receive such call.  Those same Rules and Regulations likewise protect the privacy of residential telephone subscribers who have registered their phone numbers on the national Do Not Call registry.

4.   Nevertheless, STW violates the TCPA by failing to obtain the prior express written consent of consumers before bombarding their phones with an ATDS in order to sell its goods and services.

5.   Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the conduct of STW in negligently, knowingly, and/or willfully placing unsolicited telemarketing calls to Plaintiffs' and other class members' cellular phones and residential landlines listed on the national Do Not Call registry without their prior express written consent in violation of the TCPA.

## PARTIES

6.   Plaintiff, Emma Mendoza, is a citizen of the State of Texas residing in the City of La Porte.

7.   Plaintiff, Manuel Mendoza, is a citizen of the State of Texas residing in the City of La Porte.

8.   Defendant STW is a Texas corporation whose principal office is located at 16920 Texas Ave., Suite C-9 Webster, Texas 77598 and whose registered agent for service of process is United States Corporation Agents, Inc., 9900 Spectrum Dr., Austin, TX 78717.

## JURISDICTION AND VENUE

9.   The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, *et seq*.

10.   Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute.  Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege

a nationwide class, which will result in at least one class member belonging to a different state than Defendant. Plaintiffs seek up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

11.     Venue is proper in the District because a substantial portion of the events complained of occurred here, i.e., Defendant operated its unlawful telemarketing campaign from its headquarters located in this District.

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

12.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

13.     Section 227(b)(1)(A)(iii) of the TCPA provides, in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> *       *       *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

14.     Thus, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of ATDS or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

15.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA and whose regulations are generally binding, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).

17.     This statutory language dictates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 WL 4495553, at *8 (9th Cir. Sept. 20, 2018) (emphasis supplied).[1]

18.     Predictive dialers fall within the scope of the term 'automatic telephone dialing system. *See Marks*, 2018 WL 4495553, at *8 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common

---

[1] In the past, the FCC has held that this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

technology at that time—language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA.").[2]

19.     Courts have also held that, based on the TCPA's statutory language, a predictive dialing system constitutes an ATDS under the TCPA.   *See, e.g., Marks*, 2018 WL 4495553 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—*language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA*.") (emphasis supplied); *accord Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).

20.     The FCC has also issued a Declaratory Ruling confirming that autodialed calls and calls using an artificial voice or prerecorded message to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 2008 WL 65485 (2008).

21.     The FCC took steps to further protect consumers from unwanted autodialed marketing calls pursuant to the TCPA.  Among other things, the FCC issued a Declaratory Ruling requiring that telemarketers obtain "prior express *written* consent" for all autodialed telemarketing calls to wireless numbers.  2012 FCC Ruling, 27 F.C.C. Rcd. at 1831 (emphasis added).

---

[2] Previously, the FCC has explained that while previous autodialers generated random numbers to call, "the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003). So a predictive dialer, which "has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers," *id*. at 14091, "constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers," 23 F.C.C. Rcd. at 566. In other words, an autodialer "has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15932 n.5 (2012) ("2012 FCC Ruling").

22.     In the 2012 FCC Ruling, the FCC further clarified that a consumer's written consent to receive telemarketing robocalls "must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future autodialed calls or calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.  In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.  *See also* 47 C.F.R § 64.1200(f)(8). Finally, should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained.  2012 FCC Ruling, 27 F.C.C. Rcd. at 1844 (emphasis added).

23.     Likewise, Section 227(c) of the TCPA and the related regulations protect the privacy of residential telephone subscribers and allow them to register their numbers on the National Do Not Call registry.  *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2) ("No person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the [NDNC list] ....").  Under 47 U.S.C. § 227(c) and the related regulations, it is a violation of the TCPA for parties to make more than one call within a twelve-month period to a number listed on a do-not-call registry provided for by the Federal Communications Commission ("FCC") without the residential telephone subscriber's prior express written consent. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(e). A telemarketer is not liable under this provision if it can show that it has obtained the subscriber's prior express written consent.  47 U.S.C. § 64.1200(c)(ii)

24.     Thus, under the TCPA, the burden is on the telemarketer – here, STW – to obtain, document, and prove prior express written consent.

## **FACTUAL ALLEGATIONS**

25.     STW markets itself as the No. 1 impact window and door company in Texas.[3]

26.     According to STW's website, STW manufactures and sells "the highest-grade hurricane impact windows and doors available on the market today!"[4]

27.     Over the past year, Plaintiffs have received numerous unsolicited telemarketing phone calls from representatives of STW advertising its services and goods.

28.     Plaintiffs received these calls in the wake of the devastation caused by Hurricane Harvey.   On information and belief, STW bombarded Plaintiffs and Class Members with telemarketing calls looking to capitalize on the damage caused by the hurricane.

29.     In particular, Plaintiffs received various telemarketing calls to their respective phones from representatives of STW that were placed for the purpose of marketing and/or selling STW's hurricane impact windows and doors.

30.     Plaintiff Manuel Mendoza is a subscriber of a cellular telephone whose phone number is: (713) 826-XXXX.  Plaintiff's cellular telephone number has been listed on the national Do Not Call registry for 9 years.

31.     Plaintiff Emma Mendoza is a subscriber to a residential landline telephone whose phone number is: (281) 470-XXXX.  Plaintiff's residential landline telephone number has been listed on the national Do Not Call registry for 10 years.

32.     All of the telemarketing calls alleged herein that representatives of STW placed to Plaintiffs' respective phones were made without Plaintiffs' prior express written consent to receive such calls.

---

[3] https://www.stormtightwindowstexas.com/about-us/.
[4] https://www.stormtightwindowstexas.com/.

33.    An example of one such call occurred as recently as November 13, 2018.  At or around 4:00 PM, Plaintiff Emma Mendoza received a telemarketing call from a representative of STW that was placed, on information and belief, from the following phone number:  281-528-1159.  When Ms. Mendoza answered the call, she was connected with a representative from STW who then solicited her to purchase STW's goods and services.   After a brief conversation, Ms. Mendoza informed the STW representative she was not interested, requested that she be taken off STW's marketing list, and terminated the phone call.

34.    Plaintiff Emma Mendoza estimates that she has received more than five (5) telemarketing calls to her residential landline within the last twelve (12) months from representatives of STW—all placed for the purpose of soliciting her business.  On each occasion, Ms. Mendoza requested to be taken off of STW's marketing list.  Despite this fact, STW representatives continued to bombard her residential landline with telemarketing calls.

35.    In addition, Plaintiff Emma Mendoza recollects that some of the telemarketing calls she received from STW contained a prerecorded message advertising STW's goods and services.

36.    Plaintiff Manuel Mendoza had a similar experience with STW and its sales representatives.  He estimates that he received approximately 5 telemarketing calls to his cellular phone over the past year—all placed for the purpose of soliciting his business.

37.    On information and belief, when contacting consumers, STW uses an outbound calling system that automatically dials a list of telephone numbers stored by Defendant.  Defendant's outbound dialing system uses algorithms to predict when Defendant's representatives will be available to take a call, and then automatically dials the numbers stored on Defendant's outbound dialing system.

38.    Defendant's outbound dialer is therefore a predictive dialing system, which the courts have held constitutes an ATDS under the TCPA.  *See, e.g.*, *Marks,* 2018 WL 4495553, at *

9.  *See also, e.g., Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2017 WL 2455095, at \*1 (M.D.N.C. June 6, 2017) (declining to set aside jury verdict in TCPA case in which the defendant's agent called plaintiffs using a predictive dialer), *awarding treble damages*, 2017 WL 3206324, at \*1 (M.D.N.C. July 27, 2017) (potential $61 million judgment), *appeal docketed*, No. 18-1518 (4th Cir. May 8, 2018); *Thomas v. Dun & Bradstreet Credibility Corp.*, Case No. 2:15-cv-03194-BRO-GJS (C.D. Cal.) ($10.5 million cash settlement for a class of small business owners who received telemarketing calls from a predictive dialer); *Mey v. Frontier Comms. Corp.*, No. 3:13-cv-01191 (D. Conn. June 2, 2017) (Dkt. 164) ($11 million settlement for class of consumers called by call vendor's predictive dialer).

39.     Plaintiffs further believe STW used an ATDS to contact them because STW admits on its website that it uses "automated phone technology" to contact consumers.[5]

40.     Plaintiffs further believe STW used an ATDS to contact them because they heard a prerecorded message when they called the phone number (281-528-1159) back from which Plaintiff Emma Mendoza received a telemarketing call from one of STW's representatives.

41.     At no point did STW obtain either of Plaintiffs' prior express written consent to place telemarketing calls and prerecorded messages to their respective phones.

42.     The calls were annoying and harassing to Plaintiffs, and an invasion of their privacy.  The calls violated the TCPA because they were made without Plaintiffs' prior express written consent.

43.     Not surprisingly, STW's unlawful telemarketing practices have led to significant backlash from consumers.  The internet is bereft with online reviews warning consumers about Defendant's unlawful practices[6]:

---

[5] *See* https://www.stormtightwindowstexas.com/contact-us/.
[6] Reviews available at: https://www.yelp.com/biz/storm-tight-windows-deerfield-beach, last accessed November 16, 2018.



**Erica C.**
Loxahatchee, FL
132 friends
65 reviews
32 photos
Elite '18

⭐ 6/13/2018

RUN!!!!!!!!!! This company is the exact definition of shady, scam artists and bad! If you ever give them your information they will never stop calling you. Key thing to beware of is a company who wants both you and your spouse to be present during the presentation. First sign to run! This company not only did that but pushed and pushed and pushed that. After several times of me explaining that my husband was not able to be a part of the presentation because he travels for a living, they still pushed. Just run! All I need to say

**J D.**
Palm Beach County, FL
0 friends
50 reviews
2 photos

⭐ 11/6/2018

Steer clear of this company. Their method of conducting business is undesirable and pushy. Like others, they insist on only scheduling a quote when both parties are present in a household, as well as request spousal information, which is unnecessary. After a time was requested for a quote, they tried to schedule a different time and said someone will let us know IF they will come out to give a quote.

After advising them we will not do business with them, Latosha continued to call falsly claiming we requested a callback, which we did not. A very untrustworthy company from the start.

44.      By making the unauthorized phone calls alleged herein, STW has caused consumers (including Plaintiffs) actual harm and cognizable legal injury.  This includes the aggravation and nuisance and invasions of privacy that resulted from the receipt of such phone calls, in addition to a loss of value realized for the monies consumers paid to their phone carriers for the receipt of such calls.  Furthermore, the phone calls interfered with Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. STW also caused substantial injury to their cellphones by causing wear and tear on their property, consuming battery life, and in some cases appropriating cellular data or minutes.

45.     In order to redress these injuries, Plaintiffs, on behalf of themselves and a class of similarly situated individuals, bring suit under the TCPA for statutory damages of $500 to $1,500 per phone call.

46.     On behalf of the Class, Plaintiffs also seek an injunction requiring Defendant to cease placing telemarketing calls to consumers until such time as they receive prior express written consent from all such persons.

## CLASS ACTION ALLEGATIONS

47.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

48.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

49.     Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

### The Robocall Class

All persons within the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendant or some person acting on Defendant's behalf placed one or more telephone call to their cellular telephone through the use of an automated telephone dialing system or an artificial or prerecorded voice.

### The Do Not Call Class

All persons within the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendant or some person acting on Defendant's behalf placed two or more telephone calls, within a 12-month period, to their landline line telephone number that was registered on the Do Not Call registry.

Collectively, all these persons will be referred to as "Class members."  Plaintiffs represent, and are members of, the Classes.

11

50.     Excluded from the Classes is the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, Plaintiffs' counsel and Plaintiffs' counsel's staff.

51.     Plaintiffs do not know the exact number of members of the Classes, but Plaintiffs reasonably believe the Class members number, at minimum, in the hundreds to thousands.

52.     Plaintiffs and all members of the Classes have been harmed by the acts of Defendant.

53.     This Class Action Complaint seeks injunctive relief and money damages.

54.     The joinder of all Class Members is impracticable due to the size and relatively modest value of each claim.

55.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

56.     Further, the Classes can be identified easily through records maintained by Defendant and/or its marketing agents.

57.     There are well-defined, nearly identical, questions of law and fact affecting all parties.

58.     The questions of law and fact, referred to above, involving the Class claims predominate over questions which may affect individual Class members.

59.     Such common questions of law and fact include, but are not limited to, the following:

    a.     Whether Defendant used an automatic telephone dialing system in making non-emergency calls to Class members' cell phones;

b. Whether Defendant placed two or more phone calls within a 12-month period to Class members whose phone numbers were registered on the Do Not Call registry;

c. Whether the calls Defendant placed are telemarketing calls within the meaning of the TCPA;

d. Whether Defendant can meet its burden of showing it obtained prior express written consent to make such calls;

e. Whether Defendant's conduct was knowing and/or willful;

f. Whether Defendant is liable for statutory damages; and

g. Whether Defendant should be enjoined from engaging in such conduct in the future.

60. As persons who received either (i) a non-emergency telemarketing call via an automatic telephone dialing system; or (ii) two telemarketing calls within a twelve (12) month period to a landline phone number registered on the National Do Not Call registry; without providing their prior express consent to Defendant within the meaning of the TCPA, Plaintiffs asserts claims that are typical of each Class member who also received such phone calls.

61. Further, Plaintiffs will fairly and adequately represent and protect the interests of the Class.

62. Plaintiffs have no interests which are antagonistic to any member of the Class.

63. Plaintiffs have retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

64. A class action is the superior method for the fair and efficient adjudication of this controversy.

65. Class wide relief is essential to compel Defendant to comply with the TCPA.

66.    The interest of the Class members in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Defendant from engaging in the same behavior in the future.

67.    Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims.

68.    Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole appropriate.

69.    Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### Count I

### Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

70.    Plaintiffs incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

71.    The foregoing acts and omissions of Defendant constitute violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227, *et seq*., and its implementing regulations.

72.    As a result of the Defendant's violations of 47 U.S.C. § 227, *et seq*., Plaintiffs and Class members are entitled to an award of $500 in statutory damages for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

73.    Plaintiffs and members of the Classes are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

74. Plaintiffs and members of the Classes are also entitled to an award of attorneys' fees and costs as provided by law.

## Count II

### Knowing and/or Willful Violations
### of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

75. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

76. The foregoing acts and omissions of the Defendant constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

77. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

78. Plaintiffs and all members of the Classes are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendant in the future.

79. Plaintiffs and all members of the Classes are also entitled to an award of attorneys' fees and costs as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all Class members the following relief against Defendant:

A. Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

B. As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

C.      As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member $500 in statutory damages for each and every call that violated the TCPA;

D.      An award of attorneys' fees and costs to counsel for Plaintiffs and the Class;

E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate Classes and any Subclasses the Court deems appropriate, finding that Plaintiffs are proper representatives of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes; and

G.      Such other relief as the Court deems just and proper.

[SIGNATURE BLOCK ON THE NEXT PAGE]

Dated: January 21, 2019                    Respectfully submitted,

                                           **EMMA MENDOZA and**
                                           **MANUEL MENDOZA**


                                           /s/ *Jarrett L. Ellzey*


                                           **HUGHES ELLZEY, LLP**
                                           Jarrett L. Ellzey
                                           1105 Milford St.
                                           Houston, TX 77006
                                           Phone: (713) 322-6387
                                           Fax: (888) 995-3335
                                           jarrett@hughesellzey.com


                                           **KOZONIS & KLINGER, LTD.**
                                           Gary M. Klinger*
                                           4849 N. Milwaukee Ave., Ste. 300
                                           Chicago, Illinois 60630
                                           Phone: 773.545.9607
                                           Fax: 773.496.8617
                                           gklinger@kozonislaw.com


                                           **SHAMIS & GENTILE, P.A.**
                                           Andrew J. Shamis*
                                           14 NE 1st Ave., Suite 1205
                                           Miami, FL 33132
                                           Telephone (305) 479-2299
                                           Facsimile (786) 623-0915
                                           efilings@shamisgentile.com


                                           **THE LAW OFFICES OF JIBRAEL**
                                           **S. HINDI, PLLC**
                                           Jibrael S. Hindi, Esq.*
                                           110 SE 6th Street
                                           Ft. Lauderdale, FL 33301
                                           Tel: (954) 907-1136
                                           Fax: (855) 529-9540
                                           jibrael@jibraellaw.com


                                           **Pro hac vice forthcoming*

                                           *Attorneys for Plaintiffs and the Proposed Classes*